## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

                                         **CRIMINAL NO. 16-20732**

     **vs.**

                                         **HON. ROBERT H. CLELAND**

**D-1   DEAN REYNOLDS,**

     **Defendant.**

_____/

## RESPONSE TO DEFENDANT REYNOLDS' "REFRESHED" MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Defendant Dean Reynolds was convicted at trial of fourteen counts of bribery and conspiracy in four separate corrupt schemes. After his appeal was rejected, Reynolds filed a § 2255 motion. ECF No. 315. The Court later allowed Reynolds to file a "Refreshed" motion. ECF No. 332. Reynolds now advances some of his same claims that his trial counsel was ineffective, focusing on his arguments that the conspiracy counts are barred by double jeopardy, and that he lacked an intent to commit bribery because the bribe-paying Rizzo had the lowest bid, and township policy generally favored the lowest bidder. However, evidence of Reynolds' wide-ranging corruption is overwhelming, and Reynolds has failed to establish that his trial counsel was ineffective. Reynolds' lowest bid argument also is meritless given that Reynolds repeatedly blocked competitive bidding in order to favor Rizzo.

1

I.    **Background**

A.    **Reynolds' Offense**

Reynolds was charged in an October 2016 complaint with taking bribes from garbage-hauler Chuck Rizzo. On November 2, 2016, Reynolds was indicted on eight counts of bribery—six counts relating to Rizzo, one count of bribes from engineering executive Paulin Modi, and one count of bribes from tow-company owner Gasper Fiore. On May 31, 2017, Reynolds was charged with four co-conspirators in a superseding indictment with ten bribery counts and four conspiracies: (1) the Rizzo/Reynolds conspiracy; (2) the Reynolds/Fiore conspiracy; (3) the Reynolds/Modi conspiracy; and (4) Reynolds helped Rizzo bribe New Haven Township Trustee Brett Harris.

From complaint through the June 2018 trial, Stephen Rabaut represented Reynolds. After a two-week trial, the jury convicted Reynolds on all counts. Rabaut withdrew due to an attorney/client breakdown. This Court sentenced Reynolds to 204 months—a variance from a range of 235 to 293. The Sixth Circuit rejected Reynolds' appeal. *United States v. Reynolds*, 813 F. App'x 185 (6th Cir. 2020).

B.    **The Evidence Against Reynolds at Trial Was Overwhelming**

At trial, the government presented overwhelming evidence of Reynolds' guilt. This included wiretap and consensual recordings of Reynolds discussing bribes he received from Rizzo, Modi, and Fiore, and recordings of Reynolds discussing his

willingness to facilitate bribes to Harris.  The jury saw video of Reynolds accepting cash bribes and discussing what he would do as a public official in exchange for the bribes.  Cooperators Harris, Modi, and Angelo Selva all testified they conspired with Reynolds.  In denying a Rule 29, the Court described the evidence:  "Mr. Gardey in his opening statement described the evidence, he predicted as being overwhelming. It is, at a minimum, a very substantial case, I would observe.  The motion is denied again."  Trial Transcript,  ECF No. 265, PageID.3658

### C.  Reynolds' Section 2255 Motion

Reynolds timely filed a § 2255 motion in November 2021, making eleven claims of being denied effective assistance of counsel.  After being fully briefed, with a government response (ECF No. 324) and a 55-page "Errata Sheet" by Reynolds (ECF No. 323), Reynolds filed a motion seeking ninety days to compose and file a new brief to replace his original motion.  After a conference, the Court granted Reynolds' motion in part, and ordered Reynolds to file a refreshed brief more concisely presenting his claims the Court intended would "supplant" the original motion.  ECF No. 330.  With certain exceptions, Reynolds' refreshed brief restates some of the claims he originally made back in November 2021.  The new claims[1] raised for the first time in his October 2022 refreshed brief, nearly one year

---

[1] The new claims in his brief that do not arguably relate back to his initial § 2255 motion include: trial counsel should have severed the portions of the case relating to Modi, Fiore, and Harris.

3

after the statute of limitations has already passed for his § 2255 motion, are barred. *See Oleson v. United States*, 27 F. App'x 566, 570-71 (6th Cir. 2001) (amendments to Section 2255 motion are barred); *Evans v. United States*, 284 F. App'x 304, 313 (6th Cir. 2008) (claims in supplemental petition that do not relate back are barred). Certain claims made by Reynolds in his original motion have been abandoned in the refreshed motion, and they will not be addressed by the government in this response.[2]

## II.   <u>Standard of Review</u>

A prisoner moving under § 2255(a) must allege either: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006).  The movant has the burden of proving he is entitled to relief and of establishing claims asserted. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  It is a well-settled that to obtain collateral review relief, a prisoner must clear a significantly higher hurdle than would exist on appeal.  *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

A defendant must satisfy the two-pronged *Strickland v. Washington*, 466 U.S. 668 (1984) test.  First, a defendant must demonstrate the attorney's performance was

---

[2] Claims abandoned by Reynolds:  his right to campaign for public office, multiplicitous indictment, reliance on counsel, and that the 2013 Modi bribe was not actionable.

so deficient counsel was not functioning as the "counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "It will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the identified acts or omissions overcome the presumption that a counsel rendered reasonable professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). "Scrutiny of counsel's performance is highly deferential, and counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Hurley v. United States*, 10 F. App'x 257, 260 (6th Cir. 2001). Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The prejudice element "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable" or "fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

## III.   Reynolds' Motion Should Be Denied

### A.   Reynolds Incorrectly Claims He Lacked Specific Intent

#### 1.   He Could Not Seek Pretrial Dismissal of the Indictment

Reynolds claims his trial counsel was ineffective because he should have sought dismissal of the indictment before trial on the basis that Reynolds lacked specific intent to be guilty. ECF No. 332, PageID.4766. This claim lacks any merit.

5

It actually demonstrates a fundamental misunderstanding of federal trial practice by his § 2255 counsel that buttresses the claim that Reynolds' trial counsel was a highly-experienced criminal practitioner providing effective representation.   Given the overwhelming wiretap evidence, video-recorded bribes accepted by Reynolds, recorded statements of prior bribes by Reynolds, his obstruction of justice, and the testimony of three cooperating co-conspirators, Reynolds faced certain conviction at trial.   Given the nature of this evidence and the properly-pled indictment, his claim that the case should have been dismissed pre-trial based on specific intent is baseless.

In support of his motion, Reynolds places great stock in a township statement indicating a "general policy" that contracts should be "awarded to the lowest responsible bidder."  ECF 332, PageID.4745.  The policy indicates that all contracts must be awarded by a *competitive* bidding process that considers twelve different factors, as well as the residency of bidders.  *Id.;* ECF No. 332-1, PageID.4796-97.  Reynolds claims the policy was "crucial" to his defense, and that it "conclusively establishes" his innocence, apparently because it shows the policy obligated Reynolds to vote for Rizzo's contracts.  *Id.* PageID.4751.  He argues his trial counsel was ineffective for not introducing the policy statement or calling township attorney John Dolan to explain it.  This is meritless and makes no sense because it ignores Reynolds' repeated and successful efforts to block *any* competitive bidding on Rizzo's contract, and it ignores federal law and the bribery jury instructions.

6

First, Reynolds seems to ignore the fact that the township policy he so heavily relies upon is just a "general" guidance that is not mandatory, and price was one of fourteen factors to consider.  Each trustee, like Reynolds, still had to vote on each contract and had to determine which competing company would win.  Reynolds ignores evidence that township trustees often had highly contested votes on which company should be awarded a contract. *See, e.g.*, Exhs. 320A & 320B.  Also, given the non-mandatory nature of the contract guidance cited by Reynolds, trustees were free to vote based on the factors they perceived to be best for the township—or to vote based on bribes that they had been paid like Reynolds.

Second, the jury's instructions make it clear the crime of § 666 bribery is completed upon Reynolds' agreement to corruptly take something of value with the intent to be influenced or rewarded.  It does not matter whether the "bribe actually influenced" Reynolds' vote on the contract—the crime was complete upon his agreement to accept something of value.  Jury Instructions, ECF 265, PageID.3684.  Otherwise, corrupt politicians would always argue they intended to vote the way they were bribed to vote because of the merits at issue or their own inclinations.

Third, the actual votes by Reynolds demonstrate his claimed lowest bidder defense is meritless, and his trial counsel made the correct strategic choice not to present it.  The evidence showed that after he was paid thousands in cash by Rizzo, Reynolds voted, contrary to the township's competitive bidding policy, to *prevent*

7

any bid process from occurring with the township garbage contract. Township Treasurer William Sowerby testified at trial that at a July 2013 township meeting, Reynolds brought a motion to extend the Rizzo garbage contract for four years *without* sending it out for a bid as required by the township policy and as Sowerby and the refuse committee had recommended. ECF No. 264, PageID.3340-46; Exh. 320A. Sowerby testified he was "shocked" by Reynolds' motion and vote because they made no sense, ran contrary to principles of good government, and it prevented the board of trustees from getting a competitive bid on the contract. *Id.* at 3341. Reynolds succeeded in getting his motion passed 4 to 3, and he thereby protected Rizzo from a competitive bidding process. This was part of the corrupt *quid pro quo* Reynolds provided to Rizzo. Reynolds did it again at a March 2014 township board meeting, where Reynolds voted to extend the Rizzo contract without a competitive bid process. *Id.* at 3343-46; Exh. 320B.

Given evidence that Reynolds repeatedly voted and caused the board to give Rizzo contracts *without* a competitive bidding process in direct violation of the bidding policy, Reynolds now claims that his trial counsel should have introduced the township bidding policy, and that the bidding policy "would have gone nearly all of the way" to exculpating him had it been brought out at trial. ECF No. 332, PageID.4754. This claim makes no sense since Reynolds blatantly violated the competitive bidding policy to the advantage of Rizzo when Reynolds voted

8

repeatedly to extend the Rizzo garbage contract with no bidding.  Under these circumstances, trial counsel was correct in not introducing the bid policy or having Dolan testify.  Such evidence would have further demonstrated Reynolds' corrupt intent in voting contract extensions for Rizzo without any competitive bid process.

Finally, Reynolds argues the government needed to prove he knew what he was doing in accepting bribe payments from Rizzo, Modi, and Fiore violated the law.  However, the law is clear the government need not prove that Reynolds knew his actions violated the bribery statute, since the "general rule that ignorance of the law or a mistake of the law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199 (1991) (in certain statutes, Congress will make knowledge of the law an element); *see United States v. Wuliger*, 981 F.2d 1497, 1501-03 (6th Cir. 1992) (whether a defendant need specifically know his actions violated a statute depends on the language of statute). Instead, the elements of Sections 371 and 666 were in the Court's jury instructions, which come from the language of those statutes.  Transcript, ECF No. 265, PageID.3677-78, PageID.3682-84.  There is no law holding the government must prove a defendant knew he was violating Sections 371 or 666.  As a result, Reynolds' counsel was not ineffective for not bringing meritless challenges to these charges.

## 2.   <u>Reynolds Himself Chose Not to Testify at Trial</u>

As part of his attack on counsel's performance, Reynolds claims his defense that he lacked the specific intent to commit bribery was harmed by his attorney's failure to call Reynolds to testify in his own defense.  ECF No. 332, PageID.4758. Reynolds claims had he testified, he could have rebutted the government's case, and that his counsel's decision not to call him as a witness left the jury with hearing only from the government.  Reynolds further claims that his counsel infringed on his autonomy in deciding whether to testify, and that his counsel did not do what was necessary to assist him in making that decision.  *Id.* at 4758-59.

Reynolds' claim is without merit because Reynolds himself flatly stated at trial that it was his decision not to testify, and that he had decided not to testify after considering all of the "benefits" and "detriments."  Trial Transcript, ECF No. 266, PageID.3659-61.  Reynolds also told the Court that he had met with his counsel "at length" and "on numerous occasions" in order to discuss the evidence in the case and his decision not to testify.  *Id.* at 3660.  Beyond these direct statements to the Court of his own decision, Reynolds does not articulate how his counsel failed to assist him in making the decision as to whether to testify.  Such an unsupported and vague allegation cannot serve as the basis of vacating his sentence, especially where Reynolds himself told the Court that he himself had made the decision not to testify. Reynolds is bound by the statements he made to the Court in its colloquy with him

concerning his decision not to testify. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("defendant is bound by his statements in response to that court's inquiry"); *United States v. Todaro*, 982 F.2d 1025, 1029-30 (6th Cir. 1993) (denial of § 2255 motion upheld where defendant's statements at hearing foreclosed defendant's claim that his counsel said something different in private communications); *Warner v. United States*, 975 F.2d 1207, 1210 (6th Cir. 1992) (defendant estopped from contradicting his own responses to the court at hearing).

### 3. Reynolds Himself Decided Not to Call Defense Witnesses

As part of his defense that he lacked the intent to commit bribery, Reynolds claims his counsel was ineffective because he called no witnesses and presented no evidence in the defense case. Again, however, Reynolds flatly stated in open court in response to the Court's questions that he himself had made the decision not to call any witnesses or present any evidence. Trial Transcript, ECF No. 266, PageID.3661. The Court asked if Reynolds had consulted and "survey[ed]" as to "whatever may conceivably be available in the form of evidence. And there's a strategic determination that the evidence that's presented is the only evidence that needs to be presented with respect to the defendant's point of view, right?" *Id.* Reynolds' response to the Court was "Yes, sir." *Id.*

In his original § 2255 motion, Reynolds did not identify the witnesses that he would have called to rebut the government's case. Now Reynolds identifies

11

witnesses and evidence actively *harmful* to his defense, emphasizing his corrupt blocking of competitive bidding over a corrupt contract. Furthermore, as the Court is well aware, it is a common defense strategy not to call any witnesses given the government's heavy burden of proof and the importance of defense cross-examination of the government's witnesses. Much more is needed to establish ineffective assistance of counsel in this regard, and a strategic decision not to call witnesses, especially here where Reynolds openly endorsed the choice, cannot serve as the basis for a § 2255 claim of ineffective assistance of counsel. *See, e.g., Hurley v. United States*, 10 F. App'x 257, 260 (6th Cir. 2001) ("tactical decisions of trial counsel are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy").

The Court should also reject Reynolds' claim regarding the calling of defense witnesses because such a claim cannot succeed where the proposed testimony would not have changed the outcome of the proceeding. *United States v. Sarlog*, 2012 WL 5395029, at *7 (6th Cir. 2012) (§ 2255 claim failed—proposed testimony at sentencing was not exculpatory); *Davis v. Booker*, 589 F.3d 302, 307-09 (6th Cir. 2009) (no prejudice when there is no evidence witness who did not testify would have exculpated him); *Kramer v. Kemna*, 21 F.3d 305, 309 (8th Cir. 1994) (same).

Here, in his refreshed § 2255 motion, it appears that Reynolds would have called township attorney John Dolan and Michael Housewright. As demonstrated above, however, testimony by Dolan would have harmed Reynolds' case because it would have emphasized the corrupt votes Reynolds cast seeking to protect Rizzo by violating the township's competitive bidding process. Similarly, the purported testimony by Housewright seeking to undermine Selva's competence as a witness faced the problem of Selva's own performance before the jury. As a result, Reynolds cannot show how his supposed witnesses would have altered the result of the trial, especially in light of the overwhelming evidence against him.

### B.   Charges Not Barred By Double Jeopardy or Wharton's Rule

Reynolds argues his trial counsel was ineffective for failing to seek dismissal of the conspiracy charges against him because they are barred by double jeopardy given the ten substantive bribery charges, and because they violated "Wharton's Rule." These arguments by Reynolds lack any merit and should be denied.

### 1.   Double Jeopardy

The Double Jeopardy Clause does not bar bribery conspiracy and substantive bribery counts from both being charged in the same indictment. The clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717

(1969).  In deciding whether two offenses violate the Double Jeopardy Clause, courts use the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See United States v. Finazzo*, 704 F.2d 300, 303 (6th Cir. 1983).  Under the *Blockburger* test, courts are directed to determine whether each of the offenses charged requires proof of a fact which the others do not.

Application of the *Blockburger* test in this case establishes that the bribery conspiracy and substantive counts are not barred by double jeopardy.  In order to establish a violation of § 371 conspiracy to commit bribery, the government must prove an agreement between two or more people to commit the crime of bribery.  By contrast, the government need not prove the existence of an agreement in order to prove a violation of § 666.

In *Finazzo*, the Sixth Circuit directly addressed the issue of whether a bribery conspiracy charge violates double jeopardy when alleged in tandem with a substantive bribery charge.  The court held that the "substantive bribery counts therefore clearly require proof of an additional element" beyond the elements required of the bribery conspiracy count.  *Finazzo*, 704 F.2d at 305.  "Since each offense here requires 'proof of a fact that the other does not,' the *Blockburger* test is satisfied, and defendants' Double Jeopardy arguments must fail."  *Id.*

In an effort to defeat the clear implications of this Sixth Circuit precedent and application of the *Blockburger* test, Reynolds seeks to rely upon the anomalous

14

decision in *United States v. Austin*, 529 F.2d 559 (6th Cir. 1976).[3]   Although

seemingly applicable to the circumstances presented here, subsequent Sixth Circuit

precedent has limited *Austin* to its facts and quite clearly follows the Supreme

Court's guidance in *Blockburger*.   The subsequent *Finazzo* decision by the Sixth

Circuit is directly at odds with the decision in *Austin*.   In fact, the district court in

*Finazzo* rejected the defendants' attempt to rely upon *Austin* to bar a bribery

conspiracy charge in tandem with a substantive bribery offense.   *United States v.*

*Finazzo*, 520 F. Supp. 1085, 1089-92 (E.D. Mich. 1981).   The Sixth Circuit affirmed

this decision, but did not specifically address *Austin*.   In *United States v. Fife*, 573

F.2d 369, 372-73 (6th Cir. 1976), the Sixth Circuit distinguished *Austin* and limited

it to the manner in which the indictment in that case was drafted in rejecting a double

jeopardy challenge to an indictment alleging both conspiracy and substantive travel

act counts.   Other precedent also limits the reach of *Austin*.   *See, e.g.*, *United States*

*v. Lanci*, 669 F.2d 391, 394 (6th Cir. 1982) (distinguishing *Austin* and relying on

*Blockburger* instead); *Foster v. United States*, 577 F. Supp. 665, 668 (S.D. Ohio

1983) (distinguishing *Austin* and following *Blockburger* in denying a § 2255 motion

based on double jeopardy); *United States v. Cowart*, 595 F.2d 1023, 1033 (5th Cir.

1979) (rejecting *Austin* as contrary to Supreme Court precedent).

---

[3] Reynolds's reliance on *United States v. Wheat*, 988 F.3d 299 (6th Cir. 2021) is distinguishable as it concerns the recurrent problem of charging buyer-seller relationships in drug conspiracies.

Reynolds' own argument is undercut by the fact that the conspiracies alleged against him in the Indictment and the evidence at trial of those conspiracies were broader than the substantive bribery counts. For example, Count One alleges a bribery conspiracy among Reynolds, Charles Rizzo, Derrick Hicks, Quintin Ramanauskas, Angelo Selva, Jay Schwartz, and others between March 2014 and January 2016. ECF No. 158, PageID.1112. The Indictment alleges that Rizzo provided cash, free legal services from Schwartz, and free labor from Hicks. *Id.* at PageID.1112-13. Counts Two and Three[4] of the Indictment allege substantive bribery counts against Reynolds during the time of the conspiracy, including a $3,000 cash bribe on November 5, 2015 and free legal services between March 2014 and January 2016. *Id.* at 1115. The substantive counts alleged do not cover the portions of the conspiracy involving the provision of free labor by Hicks to Reynolds or other cash bribes amounting to $50,000 made to Reynolds in the conspiracy outside of the $3,000 payment made just on November 5. In addition, the indictment and the evidence established that other individuals (Selva, Hicks, Schwartz, and Ramanauskas) participated in the conspiracy beyond trustee Reynolds and bribe payer Rizzo. As a result, additional facts were alleged and proven as part of the conspiracy beyond the substantive counts, further differentiating this case from

---

[4] The substantive bribery alleged in Counts 4-8 are not relevant since they fall outside the conspiracy, and they involve bribes by an FBI agent and Rizzo when Rizzo was cooperating.

16

*Austin*.   Similarly, Count Twelve alleges a bribery conspiracy among Reynolds, Paulin Modi, and others between 2009 and March 2013, including bribes paid in 2009 and March 2013.  *Id.* at 1121-22.  The substantive bribery count relating to the Modi conspiracy only concerns the March 2013 bribe payment.  Thus, the evidence supporting the bribery conspiracy included the 2009 bribe payments, which were not alleged in any substantive count.  In these ways, even assuming Reynolds' argument is correct, the evidence supporting the alleged bribery conspiracies went beyond the evidence supporting the substantive bribery counts.

Finally, the bribery conspiracy charge in Count Fourteen cannot be barred based on double jeopardy grounds because there were no substantive bribery charges alleged in the Indictment that are related in any way to that conspiracy, even assuming Reynolds' argument is correct.  Count Fourteen concerned the bribery conspiracy between Reynolds and Brett Harris, whereby Reynolds introduced Harris as a public official willing to take bribes from Charles Rizzo.  Since no substantive bribery count was alleged in the Indictment against Reynolds, there is no way that this count would be barred by double jeopardy under Reynolds' argument.

### 2.    Wharton's Rule

Reynolds' claim that the bribery conspiracy charges violate Wharton's Rule is also unavailing.  Wharton's Rule means that an "agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is

of such a nature as to necessarily require the participation of two persons for its commission." *Iannelli v. United States*, 420 U.S. 770, 773 n.5 (1975).  However, the Court noted that application of the rule has traditionally been limited to crimes of adultery, incest, bigamy, and dueling.  *Id.* at 782.  *Iannelli* involved conspiracy and gambling charges, and the Supreme Court found that Wharton's Rule cannot trump Congress' legislative judgment behind retaining § 371 and other substantive federal crimes as separate offenses.  *Id.* at 783-84.  Since Reynolds was not indicted for bigamy or dueling, it is not surprising his counsel did not seek dismissal of bribery conspiracy charges.  Importantly, the Sixth Circuit has specifically rejected application of Wharton's Rule to a case involving bribery and conspiracy charges in *Finazzo.*  704 F.2d at 306.  Under *Finazzo*, the judge-made Wharton's Rule cannot serve to undercut the conspiracy and substantive bribery charges against Reynolds.

### C.  Other Claims Raised By Reynolds Should Be Rejected

#### 1.  Reynolds Was Not Entrapped

Reynolds claims his counsel was ineffective for failing to bring an entrapment defense against the Harris and Fiore bribery conspiracy charges, which he claims were orchestrated by the government.  ECF No. 332, PageID 4752.  Reynolds does not assert such a defense was viable against the Rizzo or Modi bribery conspiracies.  Given the panoply of bribes that Reynolds accepted and conspired about, it was not surprising that Reynolds' counsel did not mount an entrapment defense.  It was a

reasonable strategic choice for Reynolds' counsel not to claim entrapment on the Harris and Fiore conspiracies given the abundance of predisposition evidence against Reynolds stemming from the large number of bribes that Reynolds took from Rizzo and Modi.  This kind of reasonable tactical decision-making by counsel, especially in light of the significant weakness of such a defense here, cannot serve as the basis of an ineffective assistance claim.  Reynolds' claim also fails because to mount an entrapment defense against the Harris and Fiore bribery conspiracies, he would have had to admit that he accepted bribes in those cases, but was entrapped into doing so.  First, Reynolds continues to deny any bribery with Harris and Fiore. Also, Reynolds' counsel would have recognized that admitting to accepting bribes in the Harris and Fiore conspiracies in order to claim entrapment would have undercut Reynolds' defense on the Rizzo and Modi bribes.  In context, Reynolds' ineffective assistance claim based on entrapment is without merit.

### 2.    Modi Conspiracy Not Barred By Statute of Limitations

Reynolds claims his counsel should have defended the Modi conspiracy charge by asserting a statute of limitations defense.  However, given the $8,000 in bribes paid by Modi within four years of the date of the Indictment, Reynolds' counsel was correct in not asserting a frivolous statute of limitations defense.

At trial, Modi testified he paid a series of bribes to Reynolds in exchange for securing and maintaining Reynolds' support for a contract between Modi's company

and the township. Trial Trans., ECF No. 265, PageID.3559-61. Modi gave Reynolds bribes amounting to $8,000 in 2009. In March 2013, Modi gave Reynolds a bribe of $1,000 in cash and a $7,000 check. *Id.* at 3567-71. Modi testified that in early 2013 Reynolds stated to Modi, "'for me to keep my family happy and help you with your problem or Giffels problem, I need that $7,000, otherwise I cannot help you.'" *Id.* at 3570. Modi further testified that he gave Reynolds $8,000 on March 1, 2013 in exchange for Reynolds' help as a Trustee with the contract Modi's company, Giffels, had with Clinton Township. *Id.*

Modi specifically identified the problem with the Giffels contract in 2013 as being a cost overrun on the township ACO project, and Reynolds had told Modi the township was unhappy with Giffels as a result and was ready to hire a consultant to replace Giffels. *Id.* at 3567-68. The claim in the Reynolds' Dolan declaration that Dolan may have been unaware of the cost overrun on the ACO project is not a significant piece of evidence, especially in light of Modi's direct testimony of Reynolds' demand for a bribe, that Reynolds had calmed the board down about the problem in 2013 (*id.* PageID.3569), the $1,000 in cash and the $7,000 check that Reynolds deposited into his account, and the audio recording of Reynolds himself discussing his acceptance of the 2013 bribe payments from Modi and stating to Modi, "We've helped you a lot," and "we've helped you with other county projects." Exh. 102D; Trial Trans., ECF No. 265, PageID.3588-89, 3628.

Since Reynolds accepted $8,000 in bribes from Modi in March 2013, there could be no statute of limitations defense to a conspiracy charge since Reynolds was indicted on the Modi conspiracy bribe in May 2017, which was four years and two months after the 2013 bribe was paid to Reynolds. Since Reynolds was charged well within the five-year statute of limitations, counsel was not ineffective for not mounting a defense based on the statute of limitations.

### 3.   No Basis to Seek to Strike Selva's Testimony

Reynolds also claims counsel was ineffective for failing to strike the testimony of Angelo Selva on the grounds that Selva is incompetent due to his medical condition. This claim has no merit whatsoever based on Selva's demeanor on the witness stand. Although Selva testified that he had some problems with memory loss due to diabetic neuropathy, Selva's memory for details powerfully demonstrated that he was a more than competent witness. Trial Trans., ECF No. 249, PageID.2806-67; Docket No. 264, PageID.3324-29. In fact, this Court commented on the strength of Selva's testimony in response to a claim by Reynolds' sentencing counsel that Selva's testimony should be disregarded due to incompetence. ECF No. 285, PageID.3975-76, 3980-81. This Court stated: "I heard Selva's testimony. I was favorably impressed with it. I believe the jury was as well. He was cogent, he was spontaneous, and not hesitant in his answers, and he, when he said he did not remember a fact, he spoke up and affirmatively made that known."

21

*Id.* at 3980.  Thus, any motion by trial counsel to strike Selva's testimony would have been futile.  *Holmes v. United States*, 281 F. App'x 475, 482 (6th Cir. 2008) ("Trial counsel was not ineffective for failing to file" a motion "that would have been meritless"); *Beeman v. Berghuis*, 2008 WL 4820500, *9 (W.D. Mich. Oct. 30, 2008) ("failure to make a meritless objection" is not "ineffective assistance").

### 4.   There Was No Prosecutorial Vindictiveness

Reynolds claims that his counsel was ineffective for not seeking dismissal of the four conspiracy counts on the grounds prosecutors charged them as vindictive punishment of him for not pleading guilty.  ECF No. 332, PageID.4755.  Reynolds' claims of prosecutorial vindictiveness are without merit, and this was the reason that his trial counsel did not seek to dismiss the conspiracy counts.

Reynolds was originally charged in a Complaint on October 12, 2016.  ECF No. 1.  The Complaint charged Reynolds with bribery in connection with the Clinton Township garbage contract after accepting bribes from Rizzo and an undercover federal agent.  On November 2, 2016, a grand jury charged Reynolds in an Indictment with eight counts of § 666 bribery.  ECF No. 11.  Six of the bribery counts related to the bribes paid to Reynolds by Rizzo for Reynolds' vote on the township garbage contract.  *Id.*  One bribery count related to the bribes Reynolds took from Modi on the township engineering contract, and one count concerned a bribe Reynolds took from Gasper Fiore on the Clinton Township towing contract.

22

Subsequently, in the Sixth Superseding Indictment that was returned on May 31, 2017, Reynolds was charged with four bribery conspiracies and ten individual counts of Section 666 bribery.  ECF No. 47.  The superseding Indictment also added Charles B. Rizzo, Charles P. Rizzo, Gasper Fiore, and Derrick Hicks as co-defendants.  The superseding Indictment included all the original eight § 666 charges from the first Indictment, plus three § 371 conspiracy counts relating to Rizzo, Modi, and Fiore, plus a conspiracy charge concerning bribes from Rizzo, facilitated by Reynolds, and paid to Harris concerning a garbage contract with New Haven.

The Sixth Circuit has held that "As a general matter, a superseding indictment is potentially vindictive only if it adds additional charges or substitutes more severe charges based on the same conduct charged less heavily in the first indictment.'" *United States v. LaDeau*, 734 F.3d 561, 570 (6th Cir. 2013) (citation omitted).  Any claim that the Sixth Superseding Indictment was vindictive following the original Indictment is without merit under the *LaDeau* standard.  The Sixth Superseding Indictment added four § 371 conspiracy counts, which are *less* severe charges than those stated in the original Indictment.  The § 371 conspiracy counts all have a statutory maximum of five years in prison compared to the statutory maximum of ten years for the § 666 counts in the original Indictment.  The two new § 666 counts in the Sixth Superseding Indictment relate either to new evidence gained in the investigation after the filing of the original Indictment or they clarify the original

23

counts, which did not separate out, in just one instance, two separate bribes that took place on the same day, but that related to separate schemes.

First, new Count 2 of the May 2017 Indictment included a bribe occurring on November 5, 2015. The government only learned for certain of this bribe after Ramanauskas agreed to cooperate against Reynolds, and he explained the significance of certain wiretap calls relating to a delivery of cash Ramanauskas left for Reynolds as part of the conspiracy. Second, Count 5 of the original November 2016 Indictment charged Reynolds with accepting a total bribe of $6,000 from both Rizzo and Fiore in March 2016. Counts 8 and 13 of the May 2017 Indictment separated out the two bribes from Rizzo and Fiore, which happened to have been delivered by Rizzo to Reynolds on the date in March 2016. Count 8 concerns a $2,000 bribe by Rizzo to Reynolds, and Count 13 charged Reynolds with accepting $4,000 from Rizzo, on behalf of Fiore. This clarification of the original Indictment by separating out the two bribes is hardly indicative of a vindictive prosecution.

Thus, the May 2017 Indictment added counts that were less serious (three conspiracy counts), were based on new evidence obtained by the government's investigation (the Harris conspiracy and the November 2015 Ramanauskas bribe), or were an effort by the government to separate out related conduct which concerned two separate conspiracies (Counts 8 & 13). These circumstances satisfy the government's burden under the Sixth Circuit's precedents. *LaDeau*, 734 F.3d at

566–67 ("government bears the burden of rebutting the presumption with 'objective, on-the-record explanations' such as 'governmental discovery of previously unknown evidence' or 'previous legal impossibility.'") (citation omitted).

Reynolds is also wrong in asserting that the government had all of the evidence against Reynolds when he was first charged in November 2016, as when the superseding was filed in May 2017.  For example, *after* the first Indictment was returned, Harris pleaded guilty and agreed to cooperate against Reynolds in February 2017.  The first time Reynolds was charged with the New Haven bribery conspiracy was in May 2017, after Harris agreed to cooperate.  This is further objective evidence the additional charges against Reynolds were not retaliation for any plea decision.

## IV.   **Conclusion**

Reynolds' motion should be denied.

Respectfully submitted,

DAWN N. ISON
United States Attorney

s/DAVID A. GARDEY
Assistant U.S. Attorney
211 West Fort Street, Ste. 2001
Detroit, Michigan 48226-3211
DATED: November 28, 2022    313-226-9591

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on   November 28, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which automatically caused service to the following:

Barry R. Powers, Esq.

s/DAVID A. GARDEY
Assistant U.S. Attorney
211 West Fort Street, Ste. 2001
Detroit, Michigan 48226-3211
313-226-9591

26