UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEAN REYNOLDS,

      Defendant-Petitioner,

                        Criminal Case No.: 2:16-cr-20732
                        Civil Case No.: 3:21-cv-12784
v.                        U.S. DISTRICT COURT JUDGE
                        GERSHWIN A. DRAIN

UNITED STATES OF AMERICA,

      Plaintiff-Respondent.

_____/

## OPINION AND ORDER DENYING DEFENDANT DEAN REYNOLDS' REFRESHED MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 18 U.S.C. § 2255 [#332] AND INITIAL § 2255 MOTION [#315], AND DENYING A CERTIFICATE OF APPEALABILITY

## I.     INTRODUCTION

Presently before the Court is Defendant Dean Reynolds' Refreshed Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Refreshed § 2255 Motion"), filed on October 31, 2022. Reynolds seeks relief under § 2255 based on the following alleged errors of constitutional magnitude: (1) ineffective assistance of counsel in violation of the Sixth Amendment; (2) multiple convictions for the same offense in violation of the Double Jeopardy Clause of the

Fifth Amendment; and (3) violation of First Amendment rights. Reynolds also claims he lacked the specific intent necessary to face conviction for bribery concerning programs receiving federal funds under 18 U.S.C. § 666(a). The Government filed a Response on December 13, 2022, and Reynolds filed a Reply on February 22, 2023. The Refreshed § 2255 Motion and court record of this case conclusively show that Reynolds is not entitled to relief under § 2255, and therefore an evidentiary hearing need not be held on this Motion. *See* 28 U.S.C. § 2255(b). For the following reasons, Reynolds' Refreshed § 2255 Motion is DENIED. Furthermore, Reynolds' initial § 2255 motion [#315] is DENIED AS MOOT.

## II.    BACKGROUND

Reynolds is a former elected trustee of the Clinton Township Board of Trustees in Clinton Township, Michigan. On January 17, 2018, Reynolds was charged in a Tenth Superseding Indictment with ten counts of bribery concerning programs receiving federal funds under 18 U.S.C. § 666(a) for bribes he accepted from Charles Rizzo, Gasper Fiore, Paulin Modi, and undercover federal agents. Reynolds was also charged with four counts of conspiracy to commit an offense against or to defraud the United States under 18 U.S.C. § 371, alongside Rizzo, Fiore, Modi, and New Haven Township Trustee Brett Harris. After a two-week trial before Judge Robert H. Cleland, a jury unanimously returned a verdict of

2

guilty on all counts on June 21, 2018. On February 12, 2019, the Court sentenced Reynolds to 204 months of imprisonment.

Reynolds was represented by Stephen T. Rabaut from the inception of the case through trial. While Reynolds initially hired Mr. Rabaut as paid counsel, the Court later found Reynolds indigent and permitted Mr. Rabaut to proceed as court appointed counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. Prior to sentencing, Mr. Rabaut filed a motion to withdraw as counsel on July 27, 2018 due to a breakdown in the attorney client relationship. Reynolds consented to the withdrawal. The Court granted this motion on August 6, 2018 and appointed substitute counsel to represent Reynolds.

Reynolds appealed his sentence to the Sixth Circuit on February 12, 2019, arguing that the district court erroneously calculated his Guidelines range, sentenced him disproportionately compared to other similarly situated defendants, and imposed a higher sentence as punishment for Reynolds choosing to go to trial. The Sixth Circuit rejected these arguments and affirmed the district court's judgment. Reynolds then filed a petition for a writ of certiorari with the United States Supreme Court on October 3, 2020, which the Court denied on November 19, 2020.

On November 16, 2021, Reynolds filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Reynolds filed a 55-page errata to this

motion on February 28, 2022, claiming the errors in the original motion were due to communication barriers between Reynolds and his attorney caused by COVID-19 and prison security restrictions. The Government filed a response to Reynolds' original § 2255 motion on the same day, and Reynolds filed a reply on April 4, 2022.

On April 15, 2022, Reynolds filed a motion for leave to file a memorandum of law in support of his § 2255 motion. During a status conference held on May 3, 2022, the Court stated that it would not allow Reynolds to file this additional briefing because his § 2255 motion was already fully briefed. Instead, the Court allowed Reynolds to file a "refreshed" version of his § 2255 motion that more concisely presented his argument, which was to be followed by a new response and reply. The Court indicated this refreshed briefing was to supplant the initial § 2255 motion briefing. To avoid statute of limitations issues, however, the Court has not formally terminated Reynolds' initial motion.

On October 31, 2022, Reynolds filed his Refreshed § 2255 Motion, which is presently before the Court. The Government filed its Response on December 13, 2022, and Reynolds filed a Reply on February 22, 2023. Pursuant to Administrative Order 23-AO-035, this case was reassigned from Judge Cleland to Judge Gershwin A. Drain on July 31, 2023.

### III.   LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a prisoner in federal custody "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "In order to prevail upon a § 2255 motion, the movant must allege as the basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citation omitted). The movant must establish an entitlement to relief by a preponderance of the evidence. *McQueen v. United States*, 58 Fed. App'x 73, 76 (6th Cir. 2003) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)). An evidentiary hearing must be held on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (citations omitted). Furthermore, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation omitted).

## IV.   ANALYSIS

Reynolds' Refreshed § 2255 Motion leaves much to be desired in terms of clarity. He alleges seven identifiable errors of constitutional magnitude in the form of ineffective assistance of counsel based on his trial counsel's: (1) failure to provide Reynolds with sufficient information regarding his decision to testify; (2) failure to introduce certain pieces of evidence; (3) failure to challenge Mr. Selva's competency to testify at trial; (4) failure to raise an entrapment defense to the charges involving Fiore and Harris; (5) failure to dismiss the bribery conspiracy charges under Wharton's Rule; (6) failure to move to sever the portions of the case relating to Modi, Fiore, and Harris; and (7) failure to share the Government's wiretap application warrant with Reynolds. Reynolds also claims his bribery and bribery conspiracy convictions amount to multiple punishment for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment, and that his bribery convictions violate the First Amendment. Lastly, Reynolds argues he lacked the specific intent required to face conviction for bribery. For the reasons that follow, these claims are without merit.

### A. Ineffective Assistance of Counsel Claims

"Claims of ineffective assistance of counsel are appropriately brought by filing a motion under section 2255." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). To prevail on an ineffective assistance of counsel claim, the

movant must satisfy two requirements. *Strickland v. Washington*, 466 U.S. 668 (1984). First, the movant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 687-88. When reviewing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. An attorney's failure to raise a meritless issue is not unreasonable. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).

Second, the movant must demonstrate "that the deficient performance prejudiced the defense," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This requires demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the [*Strickland*] inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### 1. Failure to Provide Reynolds With Sufficient Information Regarding Decision to Testify

Reynolds brings an ineffective assistance of counsel claim based on his trial counsel's failure to provide him with sufficient information regarding his decision to testify at trial. Specifically, Reynolds claims his trial counsel, Mr. Rabaut,

"never properly informed him of the parameters and salient aspects" of this decision. ECF No. 332, PageID. 4758.

"The right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant." *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000). "The defense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide." *Id.* at 551. If a defendant disagrees with his lawyer's advice, the defendant must, at a minimum, alert the court of his desire to testify or of the disagreement. *Id.*

Here, Reynolds has not furnished the Court with grounds to doubt the reasonableness of Mr. Rabaut's counsel on this issue. Rather than identify defects in Mr. Rabaut's counsel, Reynolds' allegations center around the *effects* of his decision not to testify—for example, Mr. Selva's testimony "was allowed to stand unrebutted and unimpeached—a crucial hurdle to clear to avoid the improper and unjust imposition of criminal liability and punishment." ECF No. 332, PageID.4749. These effects, however disadvantageous they may have been to his case, shed no light on whether Mr. Rabaut's counsel fell below an objective standard of reasonableness.

Instead, the trial record furnishes the Court with reason to believe Mr. Rabaut reasonably advised Reynolds regarding whether he should testify. After the

Government rested its case, Mr. Rabaut placed Reynolds' understanding of his constitutional right to testify and right to remain silent on the record:

MR. RABAUT: And it's my understanding that you have made a decision not to testify in this matter; is that correct?

THE DEFENDANT: That's correct.

MR. RABAUT: Is it fair to say that over the last year and a half, you and I have discussed this matter at length?

THE DEFENDANT: That is correct.

MR. RABAUT: About basically all the issues that have come up pertaining to the evidence in this case; is that a fair statement?

THE DEFENDANT: That is a fair statement.

MR. RABAUT: Is it a fair statement that we met on numerous occasions for that purpose?

THE DEFENDANT: Yes, it is.

MR. RABAUT: Is it a fair statement that after hearing all the evidence in this matter, and our discussion about the benefits of testifying or the detriments of testifying, you have elected not to testify in this matter; is that correct?

THE DEFENDANT: That's correct.

MR. RABAUT: You understand, sir, and it's been explained to you, has it not, you have an absolute right to testify if you want to?

9

THE DEFENDANT: I understand.

MR. RABAUT: And you understand that you also have an absolute right to remain silent; is that correct?

THE DEFENDANT: That's correct.

MR. RABAUT: And knowing both those things, what is your desire? Is it to testify or is it to remain silent?

THE DEFENDANT: Remain silent.

ECF No. 265, PageID.3360-61. This colloquy makes clear that Reynolds understood his decision not to testify *and* that he discussed this decision at length with Mr. Rabaut. Notably, Reynolds conveyed his decision to the Court *after* the Government rested its case, at a time where he could perceive the implications of this decision. Therefore, this ineffective assistance of counsel claim is without merit.

## 2.  Failure to Introduce Certain Evidence

Reynolds also alleges ineffective assistance of counsel based on Mr. Rabaut's failure to introduce the following evidence: (1) the Clinton Township's "policy on competitive bidding" and "ethics policy," which he claims would have "gone nearly all of the way, if not all of the way, to exculpating [him]";[1] (2)

---

[1] Reynolds claims the Township's competitive bidding policy "mandated that all contracts be awarded to the lowest qualified and responsible bidder," and that the

evidence impeaching Mr. Selva's and Mr. Modi's testimony; and (3) evidence demonstrating that Reynolds received "a great many loans from dozens of acquaintances other than those having some connection to companies having dealings with the Township," which he claims would have demonstrated that he "had no reason to be fearful that what he was doing" was unlawful. ECF No. 332, PageID.4747, 4754.

The trial record makes clear that Mr. Rabaut made a tactical decision not to call any witnesses or offer any evidence. After the Government rested its case, the Court asked Mr. Rabaut whether, after consulting with Reynolds and conducting "a survey of whatever may conceivably be available in the form of evidence," there was "a strategic determination that the evidence that's presented [by the Government] is the only evidence that needs to be presented with respect to the defendant's point of view[.]" ECF No. 265, PageID.3661. Mr. Rabaut answered affirmatively. The Court then asked Reynolds whether that was his understanding as well, to which he responded, "Yes, sir." *Id.* Because this decision was strategic in nature, there is a strong presumption that Mr. Rabaut's decision to not call witnesses or offer evidence was sound trial strategy and, therefore, reasonable.

---

ethics policy "prohibited Township officials from owning 5% or more of any Township vendor or from being employed or otherwise having or exercising material influence over that vendor." *Id.* at PageID.4747-48.

Furthermore, given that Mr. Rabaut made this decision after examining all of the available evidence, this decision is "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Reynolds fails to overcome this presumption. He offers no argumentation demonstrating, as required by *Strickland*, that this decision fell below an objective standard of reasonableness and, but for this decision, the result of the trial would have been different. Furthermore, here too Reynolds expressed his assent to this decision *after* the Government rested its case, at a time when he could perceive the implications of this decision on his case. Reynolds has not advanced any argumentation nor offered any evidence demonstrating that he otherwise disagreed with Mr. Rabaut's strategic decision at the time he expressed this assent to the Court. Therefore, this ineffective assistance of counsel claim is without merit.

### 3.  Failure to Challenge Mr. Selva's Competency

Furthermore, Reynolds alleges ineffective assistance of counsel based on Mr. Rabaut's failure to challenge Mr. Selva's competency to testify at trial. Reynolds claims Mr. Selva was incompetent to give testimony because he suffered from dementia.

Under Federal Rule of Evidence 601, "[e]very person is competent to be a witness unless [the Federal Rules of Evidence] provide otherwise." Fed. R. Evid. 601. "What must be remembered, and is often confused, is that 'competency' is a

matter of status not ability. Thus, the only two groups of persons specifically rendered incompetent as witnesses by the Federal Rules of Evidence are judges (Rule 605) and jurors (Rule 606)." *United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir. 1989). Accordingly, "[n]o mental or moral qualifications for testifying as a witness are specified" by the Rules. Fed. R. Evid. 601 (advisory committee's note to 1972 proposed rules). The Rules require only that the witness has personal knowledge (Rule 602) and understands the duty to testify truthfully (Rule 603). Fed. R. Evid. 602, 603.

Here, Mr. Rabaut's failure to challenge Mr. Selva's competency to testify at trial was not unreasonable. First, Mr. Selva was competent to testify under Rule 601 because he was not a judge nor a juror. Accordingly, a competency objection based solely on Mr. Selva's dementia would have been futile. Second, it is unlikely that an objection to Mr. Selva's testimony based on a lack of personal knowledge under Rule 602 or failure to understand the duty to testify truthfully under Rule 603 would have been successful. At sentencing, Reynolds argued that Mr. Selva's dementia impeded his ability to remember certain events. The Court rejected this challenge, with Judge Cleland stating: "I heard Selva's testimony. I was favorably impressed with it. I believe the jury was as well. He was cogent, he was spontaneous, and not hesitant in his answers, and . . . when he said he did not remember a fact, he spoke up and affirmatively made that known." ECF No. 285,

PageID.3980. Given the Court's perception of Mr. Selva's testimony, an objection under Rule 602 or Rule 603 would have likely been unsuccessful. Therefore, Mr. Rabaut's failure to raise such objections was not unreasonable, rendering this ineffective assistance of counsel claim without merit.

### 4.  Failure to Raise Entrapment Defense

Reynolds also alleges ineffective assistance of counsel based on Mr. Rabaut's failure to raise an entrapment defense to the offenses involving Gaspar Fiore and Brett Harris. These "late-added charges," Reynolds posits, "were utterly orchestrated by the government—acting through Rizzo himself, who, by this late stage had agreed to bargain with the government and act as government informant and witness in bringing [Reynolds] into their presence." ECF No. 332, PageID.4751-52. Reynolds claims he had no predisposition to carry out these offenses and only committed them through "forced dealings" with the Government. *Id.* at PageID.4752.

"The central inquiry in entrapment cases is whether law enforcement officials implanted a criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provide an opportunity to commit a crime to one who was already predisposed to do so." *United States v. Pennell*, 737 F.2d 521, 534 (6th Cir. 1984). To that end, a valid entrapment defense requires proof of the following elements: (1) "government inducement of the crime," and

14

(2) "a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Matthews v. United States*, 485 U.S. 58, 62-63 (1988). "Predisposition, the principal element in the defense of entrapment, focuses upon whether the defendant was an unwary innocent, or, instead, an unwary criminal who readily availed himself of the opportunity to perpetuate the crime." *Id.* at 63 (cleaned up).

Beyond alleging that Rizzo acted as a government informant and witness, Reynolds fails to specify *how* the Government entrapped him to commit the offenses involving Fiore and Harris. Nevertheless, the evidence put forth by the Government at trial makes clear that Reynolds was predisposed to committing these offenses. Specifically, the Government proved beyond a reasonable doubt that Reynolds accepted several bribes from Rizzo between March 2014 and March 2016 (Counts 2, 3, 4, 5, 6), and one bribe from Modi in March 2013 (Count 13). The Government also proved beyond a reasonable doubt that Reynolds engaged in bribery conspiracy with Modi from 2009 to March 2013 (Count 12), and with Rizzo, Selva, Derrick Hicks, Quintin Ramanauskas, and "Attorney A" from March 2014 to January 2016 (Count 1). Reynolds committed these offenses, in large part, *before* he committed the offenses involving Fiore and Harris: the bribery conspiracy offense involving Fiore (Count 9) occurred between March and June 2016, the bribery conspiracy offense involving Harris (Count 14) occurred between

March and May 2016, and the bribery offenses involving Fiore (Count 10, 11) occurred in March and May 2016.

Based on the foregoing, it is clear Reynolds did not lack the predisposition to engage in bribery and bribery conspiracy. Mr. Rabaut's failure to raise an entrapment defense to the offenses involving Fiore and Harris was thus not unreasonable because this defense would have failed. Accordingly, this ineffective assistance of counsel claim is without merit.

### 5. Failure to Move to Dismiss Conspiracy Charges Under Wharton's Rule

Reynolds also alleges ineffective assistance of counsel based on Mr. Rabaut's failure to move to dismiss the bribery conspiracy charges under Wharton's Rule, which he claims precluded the Government from charging him with both bribery and bribery conspiracy. Wharton's Rule is "a doctrine of criminal law enunciating *an exception* to the general principle that a conspiracy [offense] and the substantive offense[] that is its immediate end are discrete crimes for which separate sanctions may be imposed." *Iannelli v. United States*, 420 U.S. 770, 771 (1975) (emphasis added). It applies only when the underlying substantive offense "require[s] concerted criminal activity, a plurality of criminal agents." *Id.* at 785. In such circumstances, Wharton's Rule establishes "a presumption that the two [offenses] merge when the substantive offense is proved," and this

presumption can be rebutted by a showing of "legislative intent to the contrary." *Id.* at 785-86.[1]

Here, Wharton's Rule does not preclude Reynolds from facing conviction for bribery and bribery conspiracy. The substantive offense at issue—bribery under 18 U.S.C. § 666(a)—does not require a plurality of criminal agents. This crime can be completed by one person who corruptly solicits or demands a bribe, even if they never actually receive the bribe from another person. 18 U.S.C. § 666(a)(1)(B). It can also be completed by one person who corruptly offers to give a bribe, even if the bribe is not ultimately paid by another person. 18 U.S.C. § 666(a)(2). Furthermore, every Circuit that has weighed in on this issue has held that Wharton's Rule does not bar a defendant from facing conviction for § 666 bribery and § 371 bribery conspiracy. *United States v. Bornman*, 559 F.3d 150 (3d Cir. 2009); *United States v. Morris*, 957 F.2d 1391 (7th Cir. 1992); *United States v. Hines*, 541 F.3d 833 (8th Cir. 2008); *United States v. McNair*, 605 F.3d 1152 (11th Cir. 2010). Accordingly, Mr. Rabaut's failure to move to dismiss Reynolds'

---

[1] Wharton's Rule exists because, "[i]n such cases, a closer relationship exists between the conspiracy and the substantive offense because both require collective criminal activity. The substantive offense therefore presents some of the same threats that the law of conspiracy normally is thought to guard against, and it cannot automatically be assumed that the Legislature intended the conspiracy and the substantive offense to remain as discrete crimes upon consummation of the latter." *Id.* at 785.

bribery conspiracy charges under Wharton's Rule was not unreasonable because this argument would have been unsuccessful. Therefore, this ineffective assistance of counsel claim is without merit.

### 6. Failure to Move to Sever

Reynolds further alleges ineffective assistance of counsel based on Mr. Rabaut's failure to move to sever the portions of the case relating to Modi, Fiore, and Harris. Had Reynolds "known of his right to seek severance," he argues, he may have chosen to testify in one case and remain silent in the other. ECF No. 332, PageID.4756.

This claim is time-barred. Claims raised under § 2255 are subject to a one-year statute of limitations that begins to toll after the defendant's conviction becomes final. 28 U.S.C. § 2255(f)(1). A conviction becomes final when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). Reynolds raised this claim for the first time in his Refreshed § 2255 Motion, which he filed on October 31, 2022. Reynolds' conviction became final when the Supreme Court denied his petition for a writ of certiorari on November 19, 2020, and accordingly the statute of limitations expired on November 19, 2021. Therefore, this claim is barred by the statute of limitations unless it "relates back" to a timely raised claim.

Under Rule 15(c) of the Federal Rules of Civil Procedure, "[a]n amendment to a pleading relates back to the date of the original pleading when[] the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has narrowly interpreted the phrase "conduct, transaction, or occurrence" in the context of habeas proceedings. *Mayle v. Felix*, 545 U.S. 644, 663-64 (2005). Specifically, "[a] prisoner cannot assert merely that the claims in the original and amended petitioners all relate to the same trial or conviction." *Watkins v. Stephenson*, 57 F.4th 576, 581 (6th Cir. 2023) (citing *Mayle*, 545 U.S. at 662). Instead, "[t]o relate back, the amended claim[] must share a 'common core of operative facts' with the original claims." *Id.* at 576 (quoting *Cowan v. Stovall*, 645 F.3d 815, 818 (6th Cir. 2011)). Furthermore, a claim that targets a "separate episode" that occurred "at a different time and place" than the timely filed claim does not relate back. *Watkins v. Deangelo-Kipp*, 854 F.3d 846, 850 (6th Cir. 2017) (quoting *Mayle*, 545 U.S. at 660).

The Sixth Circuit's decisions in *United States v. Clark*, 637 Fed. App'x 206 (6th Cir. 2016), and *Cowan v. Stovall*, 645 F.3d 815 (6th Cir. 2011), illustrate Rule 15(c)'s applicability in the context of § 2255 proceedings. In *Clark*, the defendant timely raised an ineffective assistance of counsel claim based on appellate counsel's failure to challenge his career offender enhancement. *Clark*, 637 Fed.

App'x at 207. In an amended § 2255 motion filed outside of the statute of limitations, the defendant raised for the first time an ineffective assistance of counsel claim based on appellate counsel's failure to challenge the drug amounts used to calculate the defendant's base offense level. *Id.* The court held that this claim did not relate back to the timely raised claim because it "was an entirely new claim." *Id.* at 209. Specifically, "[t]he issue of whether the drug amounts were correctly determined at [the defendant's] sentencing is unrelated to the issue of whether his appellate counsel was ineffective for not citing authority regarding the career offender enhancement raised in the initial § 2255 motion." *Id.* In contrast, in *Cowan v. Stovall*, 645 F.3d 815 (6th Cir. 2011), the court found that an ineffective assistance of counsel claim based on counsel's failure to interview specific witnesses related back to an ineffective assistance claim alleging that counsel had "failed to investigate" and locate "witnesses who could have supported" the defendant's case. *Id.* at 819. The court reasoned that this claim related back because it "merely added more detail" to the original claim. *Id.*

Just as in *Clark*, Reynolds' ineffective assistance of counsel claim based on Mr. Rabaut's failure to move to sever the portions of the case relating to Modi, Fiore, and Harris is an entirely new claim. It is Reynolds' only claim addressing Mr. Rabaut's failure to move to sever portions of the case, and therefore it targets a separate episode from the timely raised claims. Furthermore, unlike *Cowan*, this

claim does not merely add more detail to one of Reynolds' timely ineffective assistance of counsel claims. Accordingly, this claim does not relate back to any of Reynolds' timely § 2255 claims, and therefore the Court cannot entertain it.

### 7.  Failure to Share Wiretap Application Warrant

Lastly, Reynolds raises an ineffective assistance of counsel claim based on Mr. Rabaut's failure to share the Government's wiretap application warrant with Reynolds, which he claims contained "evidence against the interests of the government" and indicated that Reynolds' ex-wife and her mother reported him to the FBI. ECF No. 332, PageID.4754. Reynolds states he did not learn about this warrant until after his trial, when he received it from his appellate counsel. He argues that "he and Rabaut could have used [this evidence] to mount a robust defense." *Id.*

Reynolds offers no real analysis as to how Mr. Rabaut's failure to share this evidence with Reynolds amounts to ineffective assistance of counsel. He has not, as required by *Strickland*, provided any argumentation as to how Mr. Rabaut's counsel under these circumstances was unreasonable, nor does he explain how, but for this alleged shortcoming, the outcome of this case would have been different. Accordingly, because Reynolds raises this issue in a perfunctory manner, he has waived this claim.

21

## B. Double Jeopardy

Reynolds argues that his convictions were obtained in violation of the Double Jeopardy Clause of the Fifth Amendment. He characterizes the Double Jeopardy Clause as barring a defendant from facing conviction for both conspiracy and the underlying substantive offense when they charge essentially the same offense. To determine whether a conspiracy charge is "essentially the same offense" as the underlying substantive offense, Reynolds claims, this Court must apply the "same evidence" test articulated in *United States v. Austin*, 529 F.2d 559 (6th Cir. 1976). ECF No. 332, PageID.4767.

It is well-settled that a defendant generally does not receive multiple punishments in violation of the Double Jeopardy Clause when he is convicted of both a substantive offense and conspiracy to commit the same offense. *Pinkerton v. United States*, 328 U.S. 640, 643 (1946). However, as put by the Supreme Court, the decisional law establishing the contours of this area of law is "a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States*, 450 U.S. 333, 343 (1981). Therefore, some unpacking is necessary.

The Double Jeopardy Clause provides that no person shall "be subject for the same offen[se] to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. Among other things, it protects against multiple punishments for the same

22

offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court held that this constitutional protection is not implicated when each offense "requires proof of a fact which the other does not." *Id.* at 304. The Court subsequently recognized in *Iannelli v. United States*, 420 U.S. 770 (1975), that the *Blockburger* test focuses on the proof necessary to prove "the statutory elements of the offense" rather than the actual evidence presented at trial: "If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli*, 420 U.S. at 785 n.17 (citation omitted).

The Sixth Circuit's decision in *United States v. Austin*, 529 F.2d 559 (6th Cir. 1976)—a case Reynolds relies heavily upon—deviated sharply from these Supreme Court cases. There, a defendant appealed his convictions for aiding and abetting and offering a bribe in violation of 18 U.S.C. §§ 201(f), accepting a bribe in violation of 18 U.S.C. § 201(g), and conspiracy to violate § 201(f) and § 201(g), arguing that the convictions violated the Double Jeopardy Clause's prohibition against multiple punishments for the same offense. *Id.* at 562. The court began its analysis by acknowledging the "settled" rule that double jeopardy is generally not implicated when a defendant "is convicted and sentenced for a substantive offense

and also for a conspiracy to commit the same offense." *Id.* (citations omitted). It also recognized that under the *Blockburger* test, "there are two offenses, and hence no Fifth Amendment violation, if conviction of one offense requires proof of a fact not required for conviction of the other." *Id.* (citations omitted).

Despite these acknowledgments, the court did not apply the *Blockburger* test. Instead, it applied the "same evidence" test, which finds a double jeopardy violation when "proof of one offense proves every essential element of another growing out of the same act." *Id.* Applying this test, the court found that the defendant's convictions ran afoul of the Double Jeopardy Clause because "[t]he proof was offered indiscriminately on all three counts and it would be difficult, if not impossible, to weed out any item of evidence that was not pertinent to all counts." *Id.* at 563.

The Sixth Circuit quickly narrowed the scope of *Austin*'s applicability in subsequent cases. In *United States v. Fife*, 573 F.2d 369 (6th Cir. 1976)—decided mere months after *Austin*—the court limited *Austin*'s applicability to cases where "the indictment was drawn in such a way that the substantive charge[] in effect charged the same agreement or concert of action involving the defendant and other persons as was charged in the conspiracy count." *Id.* at 372-73 (cleaned up). Outside of this scenario, the *Blockburger* test applies. *Id.* at 372. Two years later, the court limited *Austin* even further, holding that it does not apply when the

conspiracy charge "could be proved without proof of the offenses charged in the [substantive] counts under consideration." *See United States v. Foster*, 566 F.2d 1045 (6th Cir. 1977); *see also United States v. McCullah*, 745 F.2d 350, 356 (6th Cir. 1894) (stating that *Foster* limited *Austin*'s applicability and characterizing *Austin*'s use of the "same evidence" rule as "dicta that has not been followed").

In the years following these Sixth Circuit decisions, the Supreme Court issued several rulings emphasizing the importance of legislative intent in determining the implications of the Double Jeopardy Clause. In *Whalen v. United States*, 445 U.S. 684 (1980), the Court held that double jeopardy "at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so." *Id.* at 689. "If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress," the Court reasoned, "it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers[.]" *Id.* at 689. One year later, the Court stated in *Albernaz v. United States*, 450 U.S. 333 (1981), that "the question of what punishments are constitutionally permissible [under the Double Jeopardy Clause] is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended[] . . . to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Id.* at 344.

Following *Whalen* and *Albernaz*, the Sixth Circuit decided *United States v. Finazzo*, 704 F.2d 300 (6th Cir. 1983), which distills the Supreme Court's and the Sixth Circuit's double jeopardy case law following *Austin*. Similar to Reynolds, the *Finazzo* defendants argued that the Double Jeopardy Clause prevented them from facing punishment for bribery in violation of 18 U.S.C. § 201 and bribery conspiracy. The court began its analysis by recognizing that "[r]ecent decisions of the United States Supreme Court and indeed our circuit have . . . made it clear that where separate offenses have been charged and tried in the same proceeding, the question [of] whether separate punishments may be imposed is primarily one of Congressional intent." *Id.* at 303. The court then stated that "whatever tension may have existed between existing decisions in the Sixth Circuit, our inquiry under *Albernaz* is to determine whether Congress intended cumulative punishment for the separate offenses." *Id.* at 304. The court acknowledged the *Blockbuster* test as "one tool for determining Congressional intent in this area" and that this test directs courts "to determine whether each of the offenses charged requires proof of a fact which the others do not." *Id.* at 305. It applied the test by evaluating the statutory elements of the offenses at issue, rejecting the defendants' argument that the court should rely on the evidence that was actually submitted at trial. *Id.* "[T]he relevant inquiry," the court stated, "focuses not on the evidence actually submitted, but rather examines the proof necessary to establish the statutory elements of each

26

offense." *Id.* Because each offense requires "proof of a fact that the other does not," the court found the *Blockburger* test satisfied. *Id.* Accordingly, the defendants' double jeopardy claim failed. *Id.*

Under *Finazzo*, it is clear that the correct test for evaluating Reynolds' double jeopardy claim is the *Blockburger* test, not *Austin*'s "same evidence" test. Applying *Blockburger*, it is evident that Congress did not intend to impose cumulative punishment for bribery under 18 U.S.C. § 666 and bribery conspiracy under 18 U.S.C. § 371 because each offense requires proof of a fact that the other does not. Unlike § 371 bribery conspiracy, § 666 bribery requires proof that the defendant was an agent of a local government. And unlike § 666 bribery, § 371 bribery conspiracy requires proof that two or more persons conspired, or agreed, to commit the crime of bribery concerning programs receiving federal funds. Furthermore, other circuits have upheld both convictions for both § 666 bribery and § 371 bribery conspiracy. *See United States v. Redzic*, 627 F.3d 683, 686-87 (8th Cir. 2010) (affirming defendant's convictions for § 666 bribery and § 371 bribery conspiracy); *United States v. Bohuchot*, 625 F.3d 892, 894-95 (5th Cir. 2010) (same). Therefore, double jeopardy does not preclude Reynolds from facing conviction for both bribery and bribery conspiracy.

### C. Lack of Specific Intent

Reynolds argues that he lacked the specific intent necessary to face conviction for bribery. He claims that because he "never intended to do anything other than faithfully and fastidiously follow" the Clinton Township's policy on competitive bidding and ethics policy, the Government "could not have properly" proven he acted corruptly. ECF No. 332, PageID.4760. He also posits that, to satisfy this specific intent requirement, he must have known that his conduct was unlawful.

This claim falls short. Reynolds fails to clearly demonstrate how, based on his purported lack of specific intent, his sentence or conviction was (1) based on an error of constitutional magnitude, (2) outside the statutory limits, or (3) based on an error of fact or law that was so fundamental as to render the entire proceeding invalid. Instead, he appears to be challenging the validity of the Court's judgment, which he should have done on direct appeal and neglected to do. *See United States v. Reynolds*, 813 Fed. App'x 185 (6th Cir. 2020). While §2255 allows a defendant to raise claims that could have been raised on direct appeal, he must show "(1) cause and actual prejudice to excuse his failure to raise the claim previously; or (2) that he is 'actually innocent' of the crime." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

Reynolds fails to demonstrate either. Accordingly, because Reynolds raises this issue in a perfunctory manner, Reynolds has waived this claim.

### D. First Amendment

Lastly, Reynolds appears to claim that his bribery convictions were obtained in violation of the First Amendment. Beyond discussing First Amendment law, however, Reynolds offers no clear argumentation as to how his First Amendment rights have been violated. Therefore, because he raises this issue in a perfunctory manner, Reynolds has waived this issue.

### E. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2255 Proceedings, which was amended as of December 1, 2009, requires that a district court issue or deny a certificate of appealability when it enters a final order.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c) (2).  Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue.  28 U.S.C. § 2253(c) (3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

The Supreme Court has provided that, to demonstrate entitlement to a certificate of appealability pursuant to § 2255, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the Court concludes that reasonable jurists would not find it debatable whether Reynolds' § 2255 motion should have been decided in a manner different than that reached by this Court. Therefore, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons articulated above, Reynolds' Refreshed § 2255 Motion [#332] is DENIED. Furthermore, Reynolds' initial § 2255 motion [#315] is DENIED AS MOOT. Lastly, the Court finds that an appeal of this Opinion and Order would not be taken in good faith. *See* Fed. R. App. P. 24(a). As such, Reynolds may not appeal in forma pauperis. 28 U.S.C. § 1915(a)(3).

A certificate of appealability shall not issue.

SO ORDERED.

Dated: November 27, 2024                        /s/Gershwin A. Drain
                                                GERSHWIN A. DRAIN
                                                United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 27, 2024, by electronic and/or ordinary mail.

/s/ Marlena Williams
Case Manager